IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL RIVERA SANTIAGO,

    Plaintiff,

    v.                                          CIVIL NO. 97-1657(RLA)

UNITED STATES OF AMERICA,

    Defendant.

## ORDER DENYING 28 U.S.C. § 2255 PETITION

Before the Court is MIGUEL RIVERA SANTIAGO'S Motion Pursuant to 28 U.S.C. § 2255 (docket No. 2) and an Amended Petition Under 28 U.S.C. §2255 (docket No. 18).[1] Pursuant to the Court's orders, the United States responded to both. See docket Nos. 21 and 30.

### BACKGROUND[2]

Special agents of the Drug Enforcement Administration ("DEA") were alerted to a drug trafficking operation in the Lajas/Cabo Rojo area of Puerto Rico by a paid government confidential informant, WILLIE LINDER, a German Citizen and fisherman who has lived in Puerto Rico since 1960.

---

[1] Petitioner filed several motions requesting leave to supplement the pleadings (docket Nos. 5 and 26 ) which were denied by the Court. Subsequent pleadings to supplement (**docket No. 33**) and for summary judgement (**docket No. 36**) are also hereby **DENIED**.

[2] This Background tracks the facts from the opinion issued by the Court of Appeals in United States v. Ovalle-Marquez, 36 F.3d 212 (1st Cir. 1994), cert. denied, 513 U.S. 1132 (1995).



CIVIL NO. 97-1557 (RLA)                                                    Page 2

On November 27, 1991, LINDER met with RIVERA and co-defendants LUIS E. OVALLE-MARQUEZ (OVALLE), SERGIO MONTEAGUDO-MARTINEZ (MONTEAGUDO),[3] and HUMBERTO ARTUNDUAGA-ALVARADO (ARTUNDUAGA) in Las Cuebas, Puerto Rico. At this meeting, a plan was devised to import approximately 800 kilograms of cocaine (approximately 22 bales) to Puerto Rico by first airdropping the narcotics in waters off the coast of the Dominican Republic. The meeting's participants planned to use two vessels--LINDER would captain his own boat, and MONTEAGUDO would captain the other boat. The vessels would depart from Puerto Rico for a location off the coast of Punta Espada, Dominican Republic, where they would load the cocaine onto the vessels with the help of some other people unknown to them. Tentatively, they scheduled the smuggling venture for sometime between December 8-13, 1991.

On November 29, 1991, OVALLE and ARTUNDUAGA delivered $1000 to LINDER for the purpose of enabling LINDER to repair his boat. Thereafter, and up until December 9, OVALLE and ARTUNDUAGA met with LINDER occasionally to inquire about the status of the repairs, and to provide LINDER with additional money to complete the repairs.

At some point in time it appears that RIVERA became suspicious of LINDER, and the defendants decided not to include LINDER in the smuggling operation planned for early December. Thereafter, on or

---

[3] MONTEAGUDO entered into a plea agreement with the government and testified for the prosecution.

CIVIL NO. 97-1557 (RLA)                                                      Page 3

about December 7, 1991, OVALLE, RIVERA and MONTEAGUDO, as well as others, met to finalize the plans for the smuggling operation, without LINDER's help. At the December 7 meeting, RIVERA gave MONTEAGUDO two firearms, a .38 caliber revolver and a .22 caliber pistol. OVALLE loaded the firearms for MONTEAGUDO.

On December 9, 1991, MONTEAGUDO, co-defendant SANTOS VICTOR CHALA-RAMOS (CHALA), and two other men from the Dominican Republic, picked up 21 bales, containing approximately 800 kilograms of cocaine, off the coast of Santo Domingo, Dominican Republic, after giving a pre-arranged signal to a plane flying nearby. MONTEAGUDO decided to leave in one boat with 11 bales of cocaine, and leave 10 bales of cocaine hidden on a nearby beach because one of the boats that MONTEAGUDO had planned to use to pick up the cocaine was damaged. The remaining bales of cocaine were left guarded by the two-man crew of the damaged boat.

On December 11, 1991, MONTEAGUDO and the other Dominican man on board (known to MONTEAGUDO as QUEQUE), proceeded to import 11 of the 21 bales of cocaine into Puerto Rico. However, in an attempt to halt the pursuit and minimize the loss of the entire load, he was forced to throw seven bales into the seas when unknown persons began to pursue MONTEAGUDO's boat. MONTEAGUDO eventually delivered the remaining four bales to OVALLE and RIVERA.

The defendants then agreed to import the rest of the cocaine that had been left behind in the Dominican Republic. On December 12,

OVALLE and RIVERA met with LINDER to survey various coastline areas, including Playita Rosada in La Parguera, Puerto Rico for possible landing sites to import the remaining bales of cocaine.

On December 13, OVALLE, RIVERA and ARTUNDUAGA visited LINDER at his home to obtain his help in importing the other ten bales of cocaine. LINDER was instructed to meet with OVALLE in Ponce for further instructions. LINDER then met with OVALLE and another man as arranged. The men then went to RIVERA's home where LINDER left his car. RIVERA, OVALLE, LINDER and the other man then proceeded to a pier in Ponce. MONTEAGUDO met them at the pier, and MONTEAGUDO and LINDER then departed in a boat for Lajas, Puerto Rico. It was sometime during the day that LINDER contacted DEA agents and advised them of defendants' planned venture.

On December 14, MONTEAGUDO and LINDER departed Puerto Rico towards the area of Saona, Dominican Republic, where they were assisted by several Dominican men in the loading of the remaining ten bales of cocaine (372 kilograms). Then, on December 15, MONTEAGUDO and LINDER returned to Playita Rosada, where DEA agents seized the cocaine and arrested MONTEAGUDO. DEA agents subsequently arrested OVALLE and RIVERA.

## PROCEDURAL BACKGROUND

On June 3, 1992, a grand jury returned a second superseding seven count indictment against RIVERA, and eight other defendants. **Counts One and Two** of the indictment charged the defendants with

conspiring to import, and conspiring to possess with the intent to distribute, approximately 800 kilograms of cocaine from November 27 to December 17, 1991, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a) and 963. **Count Three** charged the defendants with aiding and abetting the importation of approximately 418 kilograms of cocaine on December 11, 1991, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2. **Count Four** charged the defendants with aiding and abetting the possession with intent to distribute approximately 150 kilograms of cocaine on December 11, 1991, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. **Counts Five and Six** charged the defendants with aiding and abetting the importation, and possession with intent to distribute, 372 kilograms of cocaine on December 15, 1991, in violation of 21 U.S.C. § 841(a)(1) and 952(a), and 18 U.S.C. § 2. **Count Seven** charged the defendants with aiding and abetting the use and carrying of firearms in relation to a drug offense, in violation of 18 U.S.C. § 924(c)(1).

Trial commenced on August 25, 1992, and the jury returned guilty verdicts against RIVERA on Counts One, Two, Five and Six. The jury acquitted all of the defendants, including RIVERA, of the charges in Counts Three, Four and Seven.

At a sentencing hearing on April 2, 1993, the Court determined that RIVERA's total offense level was 47, and that his Criminal History Category was I, which mandated a sentencing guideline range

of life imprisonment. RIVERA was then sentenced to four concurrent sentences of life imprisonment.

### Appeal

On appeal, RIVERA challenged his conviction and sentence by raising the following claims:

1) ineffective assistance of counsel;

2) improper limits on cross-examination;

3) prosecutorial misconduct;

4) firearm enhancement;

5) supervisory and managerial role enhancement; and

6) obstruction of justice enhancement.

All issues, except the ineffective assistance claim, were decided on the merits and the conviction was affirmed. See United States v. Ovalle-Marquez, 36 F.3d 212 (1st Cir. 1994), cert. denied, 513 U.S. 1132 (1995). The ineffective assistance claim was denied without prejudice as premature.

### Original 28 U.S.C. § 2255 Petition

In his original § 2255 petition, RIVERA raised the following claims of constitutional error:

1) ineffective assistance of counsel, including a conflict of interest among counsel, breach of common defense agreement, and refusal to allow the defendant to testify on his own behalf;

2) improper and arbitrary limitation on cross-examination of witnesses;

CIVIL NO. 97-1557 (RLA)                                                  Page 7

   3) illegal enhancement for role in the offense;

   4) erroneous enhancement for possession of firearm;

   5) illegal enhancement for obstruction of justice;

   6) failure to instruct the jury on specific issues;

   7) duplicity of the indictment; and

   8) retroactive application of Sentencing Guidelines Amendment 505 to Section 2D1.1(c).

### Amended Petition

RIVERA's Amended §2255 petition, filed after the Court granted his request for appointment of counsel, alleged the following claims:

   1) Ineffective assistance of counsel, which incorporated the following: violation of the attorney-client privilege; failure of counsel to call witnesses in his favor; failure of counsel to allow petitioner to testify; failure to raise the attorney-client privilege to prohibit the cooperating co-defendant from testifying about information allegedly acquired during the joint defense meetings; failure to move to suppress and/or for severance of trial; failure to move to suppress the testimony of confidential informant for having been obtained in violation of 18 U.S.C. § 201(c); and failure to move to suppress the testimony of the confidential informant, and

   2) Retroactive application of Sentencing Guidelines Amendment 505.

## DISCUSSION

### Issues disposed of on appeal

Issues disposed of in a prior appeal cannot be re-litigated by way of a 28 U.S.C. § 2255 motion. Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1993), cert. denied, 115 S.Ct. 517 (1994).

Issues No. 2-5 of RIVERA'S original petition, which were claimed and rejected on his direct appeal, cannot now be raised by way of a collateral attack on his sentence. Accordingly, they are hereby DENIED.

### Issues not raised on appeal

The Supreme Court has repeatedly emphasized that § 2255 is not a substitute for direct appeal. See e.g., United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982); McCleskey v. Zant, 499 U.S. 467 (1991). Therefore, non-constitutional claims that could have been, but were not, raised on appeal, may not be asserted by collateral attack pursuant to § 2255, absent exceptional circumstances. See Stone v. Powell, 428 U.S. 465, 477 n.10 (1976). Suveges v. United States, 7 F.3d 6, 10 (1st cir. 1993).

We find that RIVERA's claims that a) the indictment was duplicitous and b) the Court failed to instruct the jury as he requested fall far short of the "exceptional circumstances" standard enunciated by the Supreme Court. Neither claim is based on exceptional circumstances. Rather, each alleges ordinary errors that

CIVIL NO. 97-1557 (RLA) Page 9

could and should have been raised by RIVERA on direct appeal. Furthermore, even assuming error was committed, the errors would not amount to the "complete miscarriage of justice" standard established by the Supreme Court for claims that do not allege jurisdictional or constitutional errors. See, e.g., Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

Having bypassed his opportunity to raise these claims on direct appeal, RIVERA cannot now raise them in a collateral attack. Accordingly, these two claims are DENIED. Singleton, 26 F.3d at 240.

### Retroactive Application of Amendment 505 of Sentencing Guidelines

RIVERA alleges that he should be resentenced under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 505[4] to Section 2D1.1 of the United States Sentencing Guidelines, which lowered the upper limit of the Drug Quantity Table to 38 and was made retroactive pursuant to Sentencing Guidelines Section 1B1.10(c).

Unfortunately for RIVERA, even if the Amendment were to be applied, he would still face a sentencing guideline range of life imprisonment. Using a base offense level of 38 pursuant to Amendment 505, in substitution of the base offense level of 40 applied at his sentencing, and adding the 2-point enhancement for possession of the firearms; the 3-point enhancement for role in the offense; and the 3-point enhancement for obstruction of justice would give RIVERA an

---

[4] Amendment 505 became effective on November 1, 1994.

offense level of 45. Combining his Criminal History Category of I, RIVERA's offense level of 45 would still call for a term of life imprisonment.

Accordingly, because the retroactive application would not produce a reduction in RIVERA'S sentence in any case, this claim is also DENIED as inconsequential.

### Rivera's Ineffective Assistance of Counsel Claims

The Sixth Amendment of the U.S. Constitution guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Lema v. United States, 987 F.2d 48, 51 (1st Cir.1993). This right does not require either a "letter-perfect" or successful defense. United States v. Nataniel, 938 F.2d 302, 309-10 (1st Cir. 1991), cert. denied 502 U.S. 1079 (1992).

In order to prevail on a Sixth Amendment claim, a defendant must satisfy the two prongs set forth in Strickland. These are: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that prejudice resulted. Matthews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995) (citing Strickland, at 694, 104 S.Ct. at 2068).

As to the first prong, the yardstick is whether counsel has brought to "bear such skills and knowledge as will render the trial as a reliable adversarial process." Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) (citing Strickland, at 687, 104 S.Ct. at 2064).

CIVIL NO. 97-1557 (RLA) Page 11

Thus, the proper measure of attorney performance remains simply reasonableness under the prevailing professional norms taking also into consideration the totality of circumstances. Id. The evaluation as to this prong demands a fairly tolerant approach. Specifically, Strickland provides that judicial scrutiny of counsel's performance must be highly deferential because it is all too tempting for a defendant to second guess counsel's assistance after conviction and adverse sentence. Furthermore, the difficulties inherent in making the evaluation create a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, a defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Strickland, at 689, 104 S.Ct. at 2065.

In conclusion, a petitioner bears an extremely heavy burden. The Court must evaluate the challenged conduct from counsel's perspective at the time, considering the totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight.

As to the second prong, petitioner must have suffered actual prejudice as a result of counsel's decision. Strickland, at 693. This "prejudice" element also presents a high hurdle to overcome. Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). Even if counsel's error is perceived as professionally unreasonable, that by itself does not warrant setting aside the judgment. The defendant

CIVIL NO. 97-1557 (RLA)                                                    Page 12

must show that the error actually had an adverse effect on the final outcome of the trial. That is, he must affirmatively show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland at 691-94.

A review of petitioner's claims and the criminal record of this case readily demonstrates that petitioner's list of counsel's alleged failures is unsubstantiated.

The Court of Appeals for the First Circuit has established that a petitioner bears a very heavy burden on an ineffective assistance claim. "The habeas court must evaluate the [challenged] conduct from counsel's perspective at the time, considering the totality of the circumstances before it, and making every effort... to eliminate the distorting effects of hindsight." Lema, 987 F.2d at 51 (internal citations omitted).

RIVERA asserts in his amended 2255 petition that his counsel provided ineffective assistance because he allegedly failed to: 1) call witnesses in his favor; 2) allow RIVERA to testify in his own behalf; 3) raise the attorney-client privilege to stop the cooperating witness from testifying about information acquired by the joint defense meetings and/or agreement; 4) move to suppress and/or request for a trial severance, due to a tape recording of prejudicial admissions made by co-defendant, LUIS OVALLE-MARQUEZ; 5) move to suppress the testimony of the cooperating witness for having been obtained in violation of Title 18, United States Code, Section

CIVIL NO. 97-1557 (RLA)                                              Page 13

201(c); and 6) move to suppress the testimony of the confidential informant.

### Alleged failure to call witnesses in Rivera's favor and to allow him to testify in his own behalf.

RIVERA claims in his amended 2255 petition that he informed counsel of his desire to testify in his own behalf and that his counsel allegedly denied him that right because he (RIVERA) did not know English and the prosecutor could allegedly confuse him during cross-examination. RIVERA's claim falls short of the ineffective assistance standard.

RIVERA's counsel decision to recommend him not to testify on his own behalf was made by the trial counsel as part of his case strategy at the time of trial. The reasonableness of counsel's challenged conduct should be judged upon the facts of this particular case, "viewed as of the time of counsel's conduct." Strickland, 466 U.S. 690. The precise basis or bases for the trial counsel's strategy at that moment are unknown to us but they are presumed to be reasonable and deference should be granted to counsel's judgments. Therefore, RIVERA failed to debate the strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance and that, under the circumstances, the challenged action 'might be considered sound trial strategy.' Lema 987 F.2d at 51.

Second, RIVERA failed to show any prejudice suffered by him because of his counsel's failure to allow him to testify in his own behalf. RIVERA mentioned in his 2255 petition, without more, that

CIVIL NO. 97-1557 (RLA)                                                  Page 14

his testimony would have contradicted the testimony of the cooperating witnesses and the confidential informant. Nonetheless, RIVERA fails to explain the grounds for his contention and the prejudice he suffered. "Some greater particularity is necessary ...to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991).

Third, the government's strong evidence against RIVERA and the other co-defendants outweighed the value of his potential testimony in light of the totality of the circumstances and the case strategy.

Finally, Rivera has failed to present evidence in support of his contention that his counsel coerced, threatened and lied to him. RIVERA's affidavit is devoid of any reference to these acts attributed to his counsel.

In addition, as part of this claim, RIVERA asserts that his counsel failed to call two witnesses who were willing to testify on his behalf. The decision not to call these witnesses was also made by RIVERA's counsel as a "tactical" decision. In light of the circumstances surrounding the case and the defense strategy, RIVERA's counsel decided not to call them. In any event, RIVERA has failed to show any prejudice to him caused by his counsel's alleged failure to call witnesses. Furthermore, the government's strong evidence against RIVERA weakens, if not eliminates, any claim of prejudice.

CIVIL NO. 97-1557 (RLA)                                                    Page 15

### Alleged failure to raise attorney-client privilege

RIVERA states in his amended 2255 petition that in this case there was an alleged joint defense agreement and numerous joint meetings where defense strategy was discussed at which government witness SERGIO MONTEAGUDO was present. RIVERA implies that MONTEAGUDO disclosed defense strategy to the government and breached the joint defense agreement. In essence, RIVERA contends that even though his counsel was aware of the joint defense agreement, he never raised its existence to this Court in order to impede the testimony of MONTEAGUDO given at trial in violation of the agreement. Furthermore, RIVERA avers that his counsel incurred in ineffective assistance of counsel because he never raised the attorney-client privilege which allegedly would have protected the communications between the co-defendants and MONTEAGUDO.

"The joint defense privilege" is an extension of the attorney client privilege.'" United States v. Bay State Ambulance, 874 F.2d 20, 28 (1st Cir. 1989) (quoting Waller v. Financial Corp. of America, 828 F.2d 579, 583, n.7 (9th Cir. 1987)). "The joint defense privilege protects communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.' In Re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986) (citation omitted). "Communications to an attorney to establish a common defense strategy are privileged even though the attorney

CIVIL NO. 97-1557 (RLA)                                                    Page 16

represents another client with some adverse interests." Eisenberg v. Gagnon, 766 F.2d 770, 787-88 (3d Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985); see also United States v. McPartlin, 595 F.2d 1321, 1336 (7th Cir.) Cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 91979). To qualify for the privilege, the communication must have been made in confidence. See United States v. Keplinger, 776 F.2d 678, 701 (7th Cir. 1985), cert. denied 476 U.S. 1183 (1986).

RIVERA has failed to prove that a joint defense privilege even exists in the instant case. RIVERA states in his amended 2255 petition and affidavit that there was a joint defense effort between the co-defendants and their attorneys, claiming the agreement was verbal and existed since the beginning of the case.

However, RIVERA fails to provide any evidence to establish that the communications allegedly made during any meetings were made in the course of a joint defense effort, or that the privilege has not been waived. RIVERA makes reference only to various meetings that were held among various co-defendants and their attorneys in which it was agreed that if a co-defendant decided to cooperate with the government, the attorney would so inform the others and withdraw.

More importantly, RIVERA has failed to present evidence to show the nature of the information that was allegedly divulged by MONTEAGUDO to the government and if the information was obtained by MONTEAGUDO at the meetings, how this purported information prejudiced

CIVIL NO. 97-1557 (RLA)                                                    Page 17

___

his defense. In fact, RIVERA admits the difficulty of knowing if the alleged information passed along by MONTEAGUDO to the government was even used at trial. As indicated, therefore, no prejudice has been shown.

In addition, RIVERA accuses his counsel of not invoking the attorney-client privilege in order to prevent MONTEAGUDO from testifying at trial in violation of the privilege. However, since the alleged joint defense privilege has not been proven, RIVERA's counsel was under no obligation to invoke the attorney-client privilege. More so, even if the joint defense privilege existed, RIVERA failed to demonstrate that his counsel had knowledge that the information MONTEAGUDO provided at trial was obtained by him in breach of the claimed agreement.

Furthermore, the decision not to invoke the attorney-client privilege was made by the trial counsel as part of his case strategy at the time of trial. The reasonableness of counsel's challenged conduct should be judged upon the facts of this particular case, "viewed as of the time of counsel's conduct." Strickland, 466 U.S. 690. The bases for the trial counsel's strategy at that moment are unknown to us but they are presumed to be reasonable and deference should be granted to counsel's judgments. Therefore, RIVERA has failed to debate the strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance and that,

CIVIL NO. 97-1557 (RLA)                                                    Page 18

under the circumstances, the challenged action 'might be considered sound trial strategy.' Lema, 987 F.2d at 51.

Thus, RIVERA's claim is unsupported.

### Alleged failure to move to suppress co-defendant statement and/or move for severance

RIVERA also claims that his counsel failed to move to suppress prior to trial the admission of a tape of a conversation between the confidential informant and co-defendant LUIS OVALLE-MARQUEZ. In addition, RIVERA avers that his counsel failed to request a severance on his behalf.

As previously stated, the reasonableness of counsel's challenged conduct should be judged upon the facts of this particular case, "viewed as of the time of counsel's conduct." Strickland, 466 U.S. 690. The bases for the trial counsel's strategy at that moment are unknown to us but they are presumed to be reasonable and deference should be granted to counsel's judgments. Therefore, RIVERA has once again failed to overcome the strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance and that, under the circumstances, the challenged action 'might be considered sound trial strategy.' Lema, 987 F.2d at 51.

Even if RIVERA would have established that his counsel's performance was deficient, his claim still fails because he has not satisfied the second prong of Strickland, which requires a showing of prejudice. RIVERA fails to show how the admission of the tape into

CIVIL NO. 97-1557 (RLA)                                          Page 19

evidence and the failure to request a severance prejudiced his defense.

Having thus considered RIVERA's claims to set aside and vacate his sentence, the same are hereby DENIED and the petition and amended petition are hereby DISMISSED.

Judgment to be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 15TH day of August, 2002.

_____
RAYMOND L. ACOSTA
United States District Judge