UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MIGUEL A. RIVERA-SANTIAGO**
Petitioner-Appellant

v.

**UNITED STATES OF AMERICA**
Respondent

Cv. 97-1557(RLA)

**OUTLINING OF ISSUES IN COMPLIANCE OF ORDER**

**TO THE HONORABLE COURT**
**HONORABLE RAYMOND L. ACOSTA,**
**SENIOR U.S. DISTRICT JUDGE:**

Comes now the Petitioner-Appellant, Miguel A. Rivera-Santiago, by the undersigned counsel, and very respectfully states, informs, and prays as follows:

1.  On March 3, 2005, Petitioner-Appellant Miguel A. Rivera-Santiago filed a preliminary outlining of issues, (Dkt. #76). On that same afternoon, at the time of status conference, the Honorable Court granted until 03/09/05 to file the Outlining of Issues in the instant case. A pleading calendar was set, toward an evidentiary hearing to be held on 05/05-06/05, immediately after conclusion of the undersigned counsel's commitment to trial in cr. 02-377-06(DRD), (Dkt. #77).

**(1) Whether the U.S. District Court erred in failing to address the constitutional claim that a conflict of interest arose from the defense attorney's fee arrangement.**

- There are sworn allegations that most defense counsel were paid by Colombian interests, channeled through New York City defense lawyer Francisco Serrano Walker.

1

- The 08/25/1992 withdrawal of counsel Joaquín Monserrate Matienzo hearing before this Honorable Court did not satisfy the rigors of U.S. v. Foster 469 F.2d 1 (1st Cir. 1972), currently codified as Rule 44, F.R.Cr.P., and the mandated inquiry in Cuyler v. Sullivan 446 U.S. 335, 100 S.Ct. 1708 (1980), where the U.S. Supreme Court promulgated a rule requiring trial courts to conduct an inquiry if they "know or reasonably know" that defense counsel is laboring under a conflict of interest," id. at 347 . . .   When a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. Wood v. Georgia 450 U.S. 261 (1981).  See also, U.S. v. Rodríguez-Rodríguez 929 F.2d 747 (1st Cir. 1991); U.S. v. Mazzaferro 865 F.2D 450 (1st Cir. 1989).

- Immediately after conclusion of trial, the Honorable Court entertained on 10/26/02 defendant Artunduaga's Motion to Discuss a Serious Conflict of Interest Among the Attorneys for the Defense . . . , (see Dkt. #161). On 01/25/93, the Honorable Court issued an Order Granting Motion for Judgment of Acquittal as to defendant Artunduaga (see Dkt. #184). In footnote #01, the Honorable Court notes that defendant Artunduaga alleged that his attorneys were retained by another co-defendant in an attempt by the latter to oversee and control the overall defense strategy. In footnote #07, the Honorable Court granted defendant Artunduaga's request for withdrawal of counsel and appointed CJA panel attorney. On 04/16/97, co-defendant Luis Enrique Ovalle-Márquez filed an Affidavit in Support of Motion to Vacate Sentence (Dkt. #277, Cr. 91-397(RLA)) alleging that the Movant's family had handled $250,000.00 to defense counsel Francisco Serrano-Walker (see par. 4, Dkt. #277).

- Said defense counsel, Francisco Serrano Walker, as well as the other retained counsel, ought to testify at the time of an Evidentiary Hearing before this Honorable Court, under a subpoena and duces tecum with the receipts for legal services rendered and the adequate C.T.R. filings with the Internal Revenue Service and/or Commonwealth Income Tax filings.

- The production in this jurisdiction and the testimony of co-defendant Luis Enrique Ovalle-Márquez is being requested.

- Petitioner-Appellant Miguel A. Rivera-Santiago will take the stand at the time of the evidentiary hearing as well.

- That circumstance created a conflict where defense counsel was laboring under a conflict of interest. The prosecution had the choice of inquiring and prosecuting if a crime had been committed. Courts do not generally become involved in matters anent the choice of counsel or the source of attorneys'

2

fees, save in exceptional circumstances such as those triggered by grand jury investigations into non-privileged matters, see <u>Whitehouse v. U.S. District Court for the District of Rhode Island</u>, 53 F.3d 1349 (1st Cir. 1995), a conflict or potential conflict of interest, see <u>Wheat</u>, 468 U.S. at 159-60, a showing of future ongoing crime or fraud relating to the fee agreement, see <u>U.S. v. Reeder</u>, 170 F.3d (1st Cir. 1999). See also <u>U.S. v. González-Méndez, et al.</u>, Cr. 04-217(PG); <u>Opinion and Order</u>, entered 01/14/2005.

**(2)   Whether the U.S. District Court erred in failing to address the constitutional claim that due to this conflict of interest, appellant's counsel failed to relay the government's plea offer to him.**

- The government's assertion that a review of the criminal file revealed that <u>no plea agreement</u> was offered to the Petitioner-Appellant prior to his trial in Cr. 91-397(RLA), see <u>U.S. Motion in Compliance with Court Order</u>, 02/14/05, (Dkt. #73), and that Assistant U.S. Attorney Edwin Vázquez-Berríos cannot recall ever making an offer to Petitioner-Appellant Miguel A. Rivera-Santiago, see <u>U.S. Submission Outlining Preserved Issues to be Examined at the Evidentiary Hearing</u>, filed on 03/02/05 (Dkt. #75) does not answer the instant query.

- There are sworn statements and reports by private investigators for the proposition that the government proposed a plea outcome in the instant case. The matter raised by the government that plea agreements in writing bind only if signed by the Chief of the Criminal Division is not at issue. Plea negotiation is one matter and written plea agreements attested by a Chief of the Criminal Division are another matter. Precisely, was not Assistant U.S. Attorney José A. Quiles-Espinosa the Chief of the Criminal Division at that time?

   Firstly, plea negotiations inquiry is not to be limited to whether there is a plea agreement offer in the prosecutor's file, or that written plea agreements bind only if approved by the Chief of the Criminal Division, or the recollection of one of the prosecutors in the instant case. What about the recollection of then Assistant U.S. Attorney José A. Quiles-Espinosa, then the senior prosecutor in the instant case? Secondly, if there was any degree of plea negotiations, as any Code of Ethics demand in a criminal case litigation setting, failure to inform the defendant can constitute ineffective assistant of counsel, as well as failing to communicate a defendant's counteroffer or dramatically understanding the quality of the government's potential evidence against the defendant or failing to inform the defendant of the maximum punishment he could face after trial and conviction. See <u>U.S. v. Rodriguez-Rodriguez</u> 929 F. 2d 747, 753 (1st Cir. 1991).

3

- Defense counsel paid by the funds funneled by New York City defense counsel Francisco Serrano-Walker did not seek or explore plea negotiations with the government. See Government's Motion in Compliance, filed on February 14, 2005 (Dkt. #73). The failure of defense counsel to conduct plea negotiations is ineffective assistance when it would definitely be in the defendant's interest to bargain. Mason v. Balcom 531 F.2d 717 (5th Cir. Ga. 1976), rehearing denied 534 F.2d 1407 (5th Cir. Ga. 1976); Cole v. Slayton 378 F.Supp. 364 (W.D. Va. 1974)(no matter how guilty the client is, counsel should negotiate).

- In the context of the first issue authorized by the First Circuit, the defense attorney's fee arrangement, the U.S. v. Foster 469 F.2d 1.5 (1st Cir. 1972) acknowledgment and/or admonishment possible conflict of interest was of utmost importance. See U.S. v. Mazzaferro 865 F.2d 450, 4453-54 (1st Cir. 1989).

**(3) There is intervening U.S. Supreme Court jurisprudence of a constitutional dimension rendered after the U.S. Court of Appeals Order of June 25, 2004.**

- Blakely v. Washington, 524 U.S. __, 124 S.Ct. 2531 (2004)(Sixth Amendment, U.S. Constitution, dues apply to the U.S. Sentencing Guidelines) and based in light of this holding, U.S. v. Booker, 525 U.S. __, 125 S.Ct. 738 (01/12/2005), the effect of making the U.S. Sentencing Guidelines mandatory must be invalidated. As to Booker unpreserved claims of sentencing errors, see U.S. v. Antonakopoulos, 2005 W.L. 407365 (1st Cir. 02/22/05). See also, U.S. v. Serrano-Beauvaix No. 02-2286, 02-2682 (1st Cir. 03/04/05)(concurring, Lipez, Torruella, C.J.). See also Sentencing Hearing Transcript of defendant Miguel A. Rivera-Santiago, 04/01-02/92 (Cr. 91-397(RLA)(Dkt. #220-221).

**(4) Pursuant to 18 U.S.C. 3553(a)(1), the post-offense, post-sentencing rehabilitation of Petitioner-Appellant Miguel A. Rivera-Santiago during the past thirteen (13) years of incarceration is exemplary and extraordinary.**

- On March 3, 2005, the undersigned counsel brought to the attention of this Honorable Court that pursuant to 18 U.S.C. 3553(a)(1), the post offense, post sentencing rehabilitation of Petitioner-Appellant Miguel A. Rivera-Santiago during the past thirteen (13) years of incarceration is exemplary and extraordinary. The following is information available for the consideration of this Honorable Court.

The last BOP **Progress Report** available, dated July 19, 2004, assesses the institutional adjustment of Plaintiff-Appellant Miguel A. Rivera Santiago. About his work adjustment the report indicates that Mr. Rivera Santiago was assigned to the Facilities Department and Unicor Factory Shop where he was evaluated as a "good" worker. He also participated in the educational and vocational programs and completed the 40-hour drug education program and the nonresidential drug education program. Furthermore, he maintained clear disciplinary conduct and his institutional movement was only a redesignation to FCI - Allenwood from USP Atlanta, Georgia (initial designation) for "lesser security" purposes. About his physical and mental health, the report indicates an assignment to regular duty with no medical restrictions. Payment of his financial obligations to the Court was completed.

Many certificates have been awarded to Mr. Rivera Santiago, evidencing of the efforts of Mr. Rivera-Santiago to rehabilitate.

05/27/1994 – Certificate of Completion, <u>English as a Second Language</u> (successful completion of the CASA 522-C test), BOP Department of Education.

09/13/1994 – <u>General Educational Development Diploma (GED)</u>, for having made satisfactory record on the Standardized Tests for High School Equivalency, State of Georgia Department of Technical and Adult Education.

01/06/1995 - Certificate of Completion, <u>Drug Abuse Education</u>, for completion of 40 hours of Alcohol and Drug Abuse Education, Atlanta Drug Abuse Prevention Program, USP - Atlanta, Georgia.

04/02/1995 – Certificate of Completion, for completing the <u>Kairos Course</u>. Kairos is a prison ministry international organization that deals with incarcerated individuals, their families and persons who work with them.

03/ 1995 – Certificate of Achievement, for successfully completing the <u>Unicor Battle Dress Uniform Machine Operation Training Program</u>, BDU FactoryManager, USP, Atlanta, Georgia.

02/20/1999 – Certificate of Rehabilitation, Project POWMIA Adopt-A-Prisoner Program, Youth Task Force (YTF). This is a national student and youth-based organization which assisted Mr. Rivera Santiago to appeal his case.

09/25/00 – Certificate of Completion, "Parenting Phase I," Education Department, USP-Atlanta.

12/31/2001 – Certificate of Excellence, Incentive Award Committee, upon recommendation of his foreman for outstanding performance above the level of usual expectation, Unicor Allenwood.

08/ 2002 – Certificate of Achievement, for outstanding contributions to Unicor, Unicor Allenwood.

01/31/2003 – Certificate of Excellence, Incentive Award Committee, upon recommendation of his foreman for outstanding performance above the level of usual expectation, Unicor Allenwood.

08/ 2003 – Certificate of Achievement, for outstanding contributions to Unicor, Unicor Allenwood.

12/26/03 – Certificate of Appreciation, for outstanding support of the U.S. Marine Corps Reserve ("Toys for Tots").

02/25/04 – Certificate for the successful completion of "Cage Your Rage," an anger management counseling program, FCI Allenwood.

04/13/04 – Certificate of Achievement, for the successful completion of the requirements of course: Legal Research, Education Department, FCI Allenwood.

05/18/04 – Certificate of Achievement, for the successful completion of Non-Residential Treatment Program, FCI, Allenwood

08/23/04 – Certificate of Achievement, for the successful completion of the requirements of course: Legal Research, Education Department, FCI Allenwood.

Also, there are memoranda / letters of commendation that recognize the effort of Mr. Rivera Santiago to accomplish rehabilitation.

09/13/1994 – A letter by Kenneth H. Breeden, Georgia Department of Technical and Adult Education, Office of Adult Literacy Programs:

"Congratulations! It is my honor to present your Georgia General Educational Development Diploma with personal best wishes and commendations for a job well done. This diploma represents the successful completion of a personal goal of which I know you, your family, and friends are proud . . .

Georgia's HOPE Program (Helping Outstanding Pupils Educationally) can provide tuition assistance when you continue your education . . . "

04/21/95 – A Memorandum re: BDU Certificate of Achievement - Training Award, by Michael G. Wright, BDU Factory Manager, USP Atlanta, addressed to the BOP Unit Team:

"The Unicor Battle Dress Uniform Factory, USP Atlanta, instituted a training program in August 1994. All new inmate employees are entered in the program for training and evaluation prior to assignment to a production position . . . Inmate Miguel Rivera-Santiago, Register No. 07664-069, successfully completed the training program on March 21, 1994. As a result, he is qualified to operate a basic single needle lockstitch sewing machine in most applications. Further, he has an operating knowledge of most other equipment found in a clothing manufacturing factory. Based upon this inmate's training, he is a valued asset to this factory and is qualified to operate equipment in various fabric production capacities."

05/03/00 – A letter of Commendation, by Sergio Adame, Fabric Worker Supervisor, to the BOP Unit Team:

"This individual has been an outstanding worker since his employment began in the BDU factory May of 1994. He has worked as a sewing machine operator in BDU ASB-3 where he performed several sewing operations. He then transferred to the cutting table where his responsible was spreading the material and quality control. He was then moved to our packing department, where since and again, he performs outstandingly. He is currently pay grade one and his job consists of preparing the BDU trousers for final packing and shipment. This is a very critical phase of our overall trouser manufacturing process due to the fact we make several different sizes of trousers and it is imperative that these sizes do not get mixed in together. Another important aspect of his job relates to labeling and shipping, making sure the product is sent to the proper destination, as each contract has a different address to ship to Rivera requires little or no supervision in performing his assigned duties. He is very diligent and has admirable work ethics. He works well with other inmates and is always respectful to staff. Rivera is very dependable and has been a tremendous asset to the BDU factory."

07/24/00 – A memorandum / letter of achievement, by H. Bailey, Unicor Foreman, federal Prison Industries, Inc., addressed to the BOP Unit Team:

"I am sending this letter to document inmate M. Rivera's (Reg. #07664-069) work description, and work ethic. Rivera's started working in the BDU factory in May 1994. Rivera worked under my direct supervision September

1996 to December 1999. Rivera was the spreader assistant for the cutting table. In this position Rivera exceeded the norm. He was constantly exploring new paths, procedures and approaches with the lead spreader to dealing with the spreading of the fabric. Because of his creativity and dependability he was promoted to grade one UNICOR pay. Rivera was given grade one because of his accurate records and he worked at a peak performance with minimal direction from supervisors. In this position Rivera excelled in all aspects of his position. He worked this job until the cutting department was no longer needed in the factory. He then was transferred to the packing table. This was another job at which his ability to perform his job at the highest standards has made him a valued inmate worker. Inmate Rivera's work attitude is as good as any inmate worker I have had. He is well accepted by the other inmates within the BDU factory. In conclusion I feel confident in any task I give Rivera will be performed in a timely manner with meticulous attention to detail."

I hereby certify that today I electronically filed the foregoing <u>Outlining of Issues in Compliance of Order</u> with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Assistant U.S. Attorney Edwin Vázquez-Berríos, United States Attorney's Office, Torre Chardon, 350 Carlos Chardon St., Suite 1201, Hato Rey, PR 00918.

Respectfully submitted, in San Juan, Puerto Rico, today, March 9, 2005.

FOR COURT-APPOINTED PETITIONER
MIGUEL A. RIVERA-SANTIAGO

(Signed by Petitioner-Appellant
in the presence of counsel)

PETITIONER-APPELLANT
MIGUEL A. RIVERA-SANTIAGO

S/ RAFAEL ANGLADA-LOPEZ
RAFAEL ANGLADA-LÓPEZ, ESQ.
U.S.D.C. - P.R. 202508
PO BOX 194886
SAN JUAN, PUERTO RICO 00936
TEL. (787) 250-0917
FAX (787) 765-8679