UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MIGUEL A. RIVERA-SANTIAGO**<br>**Petitioner-Appellant**<br><br>v.<br><br>**UNITED STATES OF AMERICA**<br>**Respondent** | Cv. 97-1557(RLA) |

**PETITIONER'S MOTION TO VACATE SENTENCE, SCHEDULE RE-SENTENCING HEARING IN CONFORMITY WITH APPRENDI, BLAKELY, BOOKER RETROACTIVITY PURSUANT TO THE "WATERSHED RULE" EXCEPTION PURSUANT TEAGUE V. LANE 489 U.S. 288 (1989), FOR RE-SENTENCING, DUE PROCESS OF LAW, AND ANY OTHER REMEDY PURSUANT TO LAW**

TO THE HONORABLE COURT
HONORABLE RAYMOND L. ACOSTA,
SENIOR U.S. DISTRICT JUDGE:

Comes now the Petitioner-Appellant, Miguel A. Rivera-Santiago, by the undersigned counsel, and very respectfully states, informs, and prays as follows:

On November 27, 2000, Petitioner-Appellant Miguel A. Rivera-Santiago filed Leave for Supplemental Pleadings in Support of the Timely Filed Motion to Vacate Judgment of Conviction, pursuant 28 U.S.C. 2255. There Petitioner-Appellant Miguel A. Rivera-Santiago raised the recently seminal case Apprendi v. New Jersey 120 S.Ct. 2348(2202) at 7. (Dkt. #26).

1

On May 5, 2001, Petitioner-Appellant Miguel A. Rivera-Santiago filed <u>Petitioner's Motion for Leave to Supplement Citations of Authority Supporting his 28 U.S.C. 2255 Motion for an Order to Vacate his Sentence</u>. There, the Petitioner-Appellant asserted that <u>Apprendi</u> and its progeny substantially affected his motions before the Honorable Court (Dkt. #33)(p. 2, parr. 9).

On August 15, 2002, the Honorable Court entered its <u>Order Denying 28 U.S.C. 2255 Petition</u> (Dkt. #40), Final Judgment (Dkt. #41, <u>see</u> 219 F. Supp. 2d 186 (D.P.R., 2002). The Honorable Court did not discuss or adjudicate Petitioner-Appellant's <u>Apprendi</u> references. The Honorable Court did discuss the issue of retroactive application of the Sentencing Guidelines Amendment 505 to Section 2D1.1(c), effective on November 1, 1994. The Honorable Court decided to approach this issue in a pragmatical fashion, to wit:

> "Unfortunately for Rivera, even if the Amendment were to be applied, he would still face a sentencing guideline range to life imprisonment . . . Combining his Criminal History Category of I, Rivera' offense level of 45 would still call for a term of life imprisonment. Accordingly, because the retroactive application would not produce a reduction in Rivera's sentence in any case, this claim is also <u>Denied</u> as inconsequential."

<u>See</u> <u>Order Denying 28 U.S.C. 2255 Petition</u>, 219 F. Supp. 2d 186 (D.P.R. 08/15/2002, slip opinion, pp. 9-10).

1.  **Teague and retroactivity**

    Under <u>Teague v. Lane</u>, 489 U.S. 288, 311 (1989), when the Supreme Court announces a new rule of criminal procedure, although applicable to cases still on direct review, the new procedural rule is generally not retroactively applicable to cases that are past that stage – convictions that are final. <u>Teague</u>, however, carves out an exception for "watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of

the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 494-95 (1990) (quoting Teague, 489 U.S. at 311). New procedural rules that qualify under this exception are retroactively applicable and can be raised through a timely § 2255 petition.

U.S. v. Booker 125 S.Ct. 738 (2005), Blakely v. Washington 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey 120 S.Ct. 2348 (2000) established a new rule of criminal procedure. The Supreme Court has never expressly held that Teague applies to § 2255 motions. See Teague, 489 U.S. at 327 n.1 (Brennan, J. dissenting) (whether Teague applies to § 2255 proceedings is an open question). The Court has noted, moreover, that the "Teague rule is grounded in important considerations of federal-state relations," Collins v. Youngblood, 497 U.S. 37, 41 (1990). These considerations are not present in the § 2255 context. Thus, a strong argument can be made that the Teague retroactivity bar should not apply to § 2255 motions. To the extent that the Teague rule also reflects concerns for finality, those concerns are adequately addressed by the one year statute of limitations under § 2255. See generally Liebman and Hertz, Federal Habeas Corpus Practice and Procedure, 4th Ed., § 25.6, Finality, pp. 1112-12 n.19 (2001).

a)   **Booker as the new procedural rule**

Booker announced a new rule of criminal procedure, since it resolved a question expressly reserved in Blakely – whether Blakely should apply to the federal sentencing guidelines. See Guzman v. United States, F.3d , 2005 WL 803214, *2 (2d Cir. Apr. 8, 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). Booker qualifies as a "watershed rule." Schriro v. Summerlin, 124 S. Ct. 2519 (2004) held that Ring v. Arizona, 536 U.S. 584 (2002), which applied Apprendi in the death penalty context, is not retroactive

on collateral review. Summerlin is distinguishable because the majority there noted that the question whether the beyond-a-reasonable-doubt requirement of Apprendi would be retroactive on collateral proceedings was not before it since Arizona required that judges find aggravating circumstances beyond a reasonable doubt in death cases. Given that prior burden of proof rulings, such as In re Winship, 397 U.S. 358 (1970) and Mullaney v. Wilbur, 421 U.S. 684 (1975), were held retroactive because they were essential to accurate fact-finding, see Ivan V. v. City of New York, 407 U.S. 203 (1972) (Winship retroactive); Hankerson v. North Carolina, 432 U.S. 233 (1977) (Mullaney retroactive), and given the 5-4 split in Summerlin, it is at least arguable that the Court will hold that the Apprendi beyond-a-reasonable doubt requirement (as applied to the federal guidelines in Booker) constitutes a watershed rule, which would be fully retroactive. In addition, all the Justices in Summerlin appeared to agree that the first requirement for a watershed rule, fundamental fairness, was met -- the battle was over whether the jury requirement increased accuracy. Moreover, Justice O'Connor wrote that, despite Summerlin, even final guideline judgments "arguably remain open to collateral attack." Blakely, 124 S. Ct. at 2549. See generally, Note, Rethinking Retroactivity, 118 Harv. L. Rev. 1642, 1663 (March 2005) (arguing that Apprendi should apply retroactively because "Apprendi's reasonable doubt guarantee unambiguously improves the accuracy of underlying criminal proceedings").

Several circuits, however, have ruled that Booker, although establishing a new procedural rule, is not retroactive for the same reasons Summerlin found Ring not retroactive. See Guzman v. United States, _ F.3d _ , 2005 WL 803214, *3 (2d Cir. Apr. 8, 2005); Varela v. United States, 400 F.3d 864, 867 (11th Cir. 2005); Humphress v. United States, 398 F.3d

855, 863 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005).

    b)    **Blakely as the new procedural rule**

Blakely can be viewed as the key decision establishing the new procedural rule at issue because it was not until Blakely that the Supreme Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S. Ct. at 2537. See United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). As argued above, this new rule should be viewed as a watershed rule because it implicates the burden of proof and therefore affects the accuracy of the proceeding. The Tenth Circuit in Price, however, while holding that Blakely did announce a new rule, rejected the argument that it was a watershed rule on the basis of Summerlin. Price, 400 F.3d at 848.

    c)    **Apprendi as the new procedural rule**

Another approach is that neither Booker nor Blakely announced the new rule, but instead just applied the rule first set forth in Apprendi. If a holding is "dictated" by existing precedent, then it is not a "new rule." Teague, 489 U.S. at 301. The advantage of this approach is that it obviates the need to establish retroactivity under Teague for all cases that became final sometime after Apprendi was decided (June 26, 2000). Justice Stevens, after repeatedly noting throughout his majority opinion that the Court was just following prior precedent, concluded by stating, "accordingly, we reaffirm our holding in Apprendi: any fact (other than the fact of prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S.

Ct. at 756. Likewise, Justice Breyer, at the very beginning of his remedial majority opinion, stated that the Court was "[a]pplying its decisions in Apprendi . . . and Blakely . . ." Id. Notably, the Booker Court went out of its way to state that the Sixth Amendment holding of Blakely was "clear" from the Court's earlier decisions in Jones v. United States, 526 U.S. 227 (1999), Apprendi, and Ring v. Arizona, 536 U.S. 584 (2002). Booker, 125 S. Ct. at 749. The Court also characterized the "principles we sought to vindicate" in Apprendi as "not the product of recent innovations in our jurisprudence" and as "unquestionably applicable" to the federal sentencing guidelines. Id. at 753. The five circuits cited above, however, which have held that either Booker or Blakely established the new rule, are to the contrary.

2.  **Booker as a substantive (instead of a procedural) ruling**

Booker, at least the remedial portion, is not a procedural holding but a substantive one. As the Court in Bousley v. U.S. 523 U.S. 614, 622 (1998) explained, "[B]ecause Teague by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." Id. at 1610; see also United States v. McKie, 73 F.3d 1149, 1151 (D.C. Cir. 1996) ("interpretation of the substantive terms of a federal statute" not subject to Teague analysis).

Booker qualifies as a substantive holding because the Court, through statutory construction and excision, changed the meaning of a criminal statute – the SRA. The effect of this change was to alter the mandatory minimum and maximum penalties (which under the binding guidelines system had been the guideline minimum and maximum), by replacing them with the minimum and the maximum penalty allowed under the statute for the offense of conviction. While it is true that Summerlin found that Ring (which applied Apprendi in the

6

death penalty context) did not announce a substantive rule, but merely a procedural one, Summerlin, 124 S. Ct. at 2524, the remedy the Court imposed there was different than the remedy imposed in Booker. In Ring, the Court corrected the Apprendi error by changing the sentencing procedure to require fact finding of aggravating factors by the jury, instead of by the judge. See Summerlin, 124 S. Ct. at 2524. In Booker, the Court corrected the Apprendi error by changing the substantive penalty available. Booker therefore establishes a new substantive rule and should be given retroactive effect. (But see four circuits mentioned above which held that Booker established a new procedural rule, and not a substantive one.)

3. **Post-offense, post-sentencing rehabilitation of Petitioner-Appellant**

The post-offense, post-sentencing rehabilitation of Petitioner-Appellant Miguel A. Rivera-Santiago during the past thirteen (13) years of incarceration is exemplary and extraordinary. The following is information available for the consideration of this Honorable Court.

- The last BOP **Progress Report** available, dated July 19, 2004, assesses the institutional adjustment of Plaintiff-Appellant Miguel A. Rivera Santiago. About his work adjustment the report indicates that Mr. Rivera Santiago was assigned to the Facilities Department and Unicor Factory Shop where he was evaluated as a "good" worker. He also participated in the educational and vocational programs and completed the 40-hour drug education program and the nonresidential drug education program. Furthermore, he maintained clear disciplinary conduct and his institutional movement was only a redesignation to FCI - Allenwood from USP Atlanta, Georgia (initial designation) for "lesser security" purposes. About his physical and mental health, the report indicates an assignment to regular duty with no medical restrictions. Payment of his financial obligations to the Court was completed.

- Many certificates have been awarded to Mr. Rivera Santiago, evidencing of the efforts of Mr. Rivera-Santiago to rehabilitate.

    05/27/1994 – Certificate of Completion, English as a Second Language (successful completion of the CASA 522-C test), BOP Department of Education.

    09/13/1994 – General Educational Development Diploma (GED), for having made

7

satisfactory record on the Standardized Tests for High School Equivalency, State of Georgia Department of Technical and Adult Education.

01/06/1995 - Certificate of Completion, <u>Drug Abuse Education</u>, for completion of 40 hours of Alcohol and Drug Abuse Education, Atlanta Drug Abuse Prevention Program, USP - Atlanta, Georgia.

04/02/1995 – Certificate of Completion, for completing the <u>Kairos Course</u>. Kairos is a prison ministry international organization that deals with incarcerated individuals, their families and persons who work with them.

03/ 1995 – Certificate of Achievement, for successfully completing the <u>Unicor Battle Dress Uniform Machine Operation Training Program</u>, BDU Factory Manager, USP, Atlanta, Georgia.

02/20/1999 – Certificate of Rehabilitation, Project POWMIA Adopt-A-Prisoner Program, Youth Task Force (YTF). This is a national student and youth-based organization which assisted Mr. Rivera Santiago to appeal his case.

09/25/00 – Certificate of Completion, "<u>Parenting Phase I</u>," Education Department, USP-Atlanta.

12/31/2001 – Certificate of Excellence, Incentive Award Committee, upon recommendation of his foreman for outstanding performance above the level of usual expectation, Unicor Allenwood.

08/2002 – Certificate of Achievement, for outstanding contributions to Unicor, Unicor Allenwood.

01/31/2003 – Certificate of Excellence, Incentive Award Committee, upon recommendation of his foreman for outstanding performance above the level of usual expectation, Unicor Allenwood.

08/2003 – Certificate of Achievement, for outstanding contributions to Unicor, Unicor Allenwood.

12/26/03 – Certificate of Appreciation, for outstanding support of the U.S. Marine Corps Reserve ("Toys for Tots").

02/25/04 – Certificate for the successful completion of "<u>Cage Your Rage</u>," an <u>anger management counseling program</u>, FCI Allenwood.

04/13/04 – Certificate of Achievement, for the successful completion of the

requirements of course: <u>Legal Research</u>, Education Department, FCI Allenwood.

05/18/04 – Certificate of Achievement, for the successful completion of <u>Non-Residential Treatment Program</u>, FCI, Allenwood

08/23/04 – Certificate of Achievement, for the successful completion of the requirements of course: <u>Legal Research</u>, Education Department, FCI Allenwood.

- Also, letters of commendation recognize the effort of Mr. Rivera Santiago to accomplish rehabilitation.

  09/13/1994 – A letter by Kenneth H. Breeden, Georgia Department of Technical and Adult Education, Office of Adult Literacy Programs:

  "Congratulations! It is my honor to present your Georgia General Educational Development Diploma with personal best wishes and commendations for a job well done. This diploma represents the successful completion of a personal goal of which I know you, your family, and friends are proud . . . Georgia's HOPE Program (Helping Outstanding Pupils Educationally) can provide tuition assistance when you continue your education . . . "

  04/21/95 – A Memorandum re: BDU Certificate of Achievement - Training Award, by Michael G. Wright, BDU Factory Manager, USP Atlanta, addressed to the BOP Unit Team:

  "The Unicor Battle Dress Uniform Factory, USP Atlanta, instituted a training program in August 1994. All new inmate employees are entered in the program for training and evaluation prior to assignment to a production position . . . Inmate Miguel Rivera-Santiago, Register No. 07664-069, successfully completed the training program on March 21, 1994. As a result, he is qualified to operate a basic single needle lockstitch sewing machine in most applications. Further, he has an operating knowledge of most other equipment found in a clothing manufacturing factory. Based upon this inmate's training, he is a valued asset to this factory and is qualified to operate equipment in various fabric production capacities."

  05/03/00 – A letter of commendation, by Sergio Adame, Fabric Worker Supervisor, to the BOP Unit Team:

  "This individual has been an outstanding worker since his employment began in the BDU factory May of 1994. He has worked as a sewing machine operator in BDU ASB-3 where he performed several sewing operations. He then transferred to the cutting table where his responsible was spreading the material and quality control. He was then moved to our packing department, where since and again, he performs

9

outstandingly. He is currently pay grade one and his job consists of preparing the BDU trousers for final packing and shipment. This is a very critical phase of our overall trouser manufacturing process due to the fact we make several different sizes of trousers and it is imperative that these sizes do not get mixed in together. Another important aspect of his job relates to labeling and shipping, making sure the product is sent to the proper destination, as each contract has a different address to ship to Rivera requires little or no supervision in performing his assigned duties. He is very diligent and has admirable work ethics. He works well with other inmates and is always respectful to staff. Rivera is very dependable and has been a tremendous asset to the BDU factory."

07/24/00 – A memorandum / letter of achievement, by H. Bailey, Unicor Foreman, federal Prison Industries, Inc., addressed to the BOP Unit Team:

"I am sending this letter to document inmate M. Rivera's (Reg. #07664-069) work description, and work ethic. Rivera's started working in the BDU factory in May 1994. Rivera worked under my direct supervision September 1996 to December 1999. Rivera was the spreader assistant for the cutting table. In this position Rivera exceeded the norm. He was constantly exploring new paths, procedures and approaches with the lead spreader to dealing with the spreading of the fabric. Because of his creativity and dependability he was promoted to grade one UNICOR pay. Rivera was given grade one because of his accurate records and he worked at a peak performance with minimal direction from supervisors. In this position Rivera excelled in all aspects of his position. He worked this job until the cutting department was no longer needed in the factory. He then was transferred to the packing table. This was another job at which his ability to perform his job at the highest standards has made him a valued inmate worker. Inmate Rivera's work attitude is as good as any inmate worker I have had. He is well accepted by the other inmates within the BDU factory. In conclusion I feel confident in any task I give Rivera will be performed in a timely manner with meticulous attention to detail."

## CONCLUSION

Petitioner-Appellant Miguel A. Rivera-Santiago respectfully requests this Honorable Court, in conformity with the seminal principles announced in <u>Apprendi</u>, <u>Blakely</u> and <u>Booker</u> by the U.S. Supreme Court, to reconsider the prior 08/15/2002 Denial to the Retroactive Application of Amendment 505 of the U.S. Sentencing Guidelines and the case law cited above, and to re-sentence this 52-year-old convicted Defendant-Appellant, who has already served over thirteen (13) years of

incarceration with superb institutional adjustment and complete rehabilitation, and any other remedy pursuant to law.

THEREFORE, Petitioner-Appellant Miguel A. Rivera-Santiago respectfully prays this Honorable Court, Honorable Raymond L. Acosta, to accept the instant <u>Petitioner's Motion to Vacate, Schedule Re-sentencing in Conformity with Apprendi, Blakely, Booker Retroactivity Pursuant to the "Watershed Rule," Exception Pursuant Teague V. Lane 489 U.s. 288 (1989), For Re-sentencing, Due Process of Law, And Any Other Remedy Pursuant to Law</u>, and any other remedy pursuant to law.

I hereby certify that today I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Assistant U.S. Attorney Edwin Vázquez-Berríos, United States Attorney's Office, Torre Chardón, 350 Carlos Chardón St., Suite 1201, Hato Rey, PR 00918.

Respectfully submitted, in San Juan, Puerto Rico, today, May 3, 2005.

FOR COURT-APPOINTED PETITIONER-APPELLANT
MIGUEL A. RIVERA-SANTIAGO


S/ RAFAEL ANGLADA-LOPEZ
RAFAEL ANGLADA-LÓPEZ, ESQ.
U.S.D.C. - P.R. 202508
PO BOX 194886
SAN JUAN, PUERTO RICO 00936
TEL. (787) 250-0917
FAX  (787) 765-8679